UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NATHAN LYNN VIRTUE,

    Plaintiff,

v.                                           Case No.:  2:25-cv-63-SPC-NPM

YES CARE LLC *et al.*,

    Defendants.
_____/

## **OPINION AND ORDER**

Before the Court is Defendants YesCare Corp. and Dr. Andrew Safron's Motion to Dismiss or for Summary Judgment (Doc. 34).

## **Background**

Plaintiff Nathan Lynn Virtue filed this action as a pretrial detainee in the Charlotte County Jail. Safron is an osteopathic physician, and he was employed by YesCare as a psychiatrist at the jail when Virtue's claims arose. Virtue's complaint alleges Safron and YesCare failed to adequately treat Virtue's medical and psychiatric needs. Specifically, Virtue accuses Safron of refusing to prescribe medications, and he blames YesCare's staffing levels for lengthy delays in treatment.

The defendants have submitted a declaration of Safron and Virtue's relevant medical records. They ask the Court to treat their motion as one for

summary judgment under Federal Rule of Civil Procedure 12(d).  The Court entered a Summary Judgment Notice (Doc. 35) to ensure Virtue understood the procedure for and effect of a summary judgment motion.  Virtue does not object to treatment of the defendants' motion as one for summary judgment, and he has had a reasonable opportunity to present all material facts.  The Court finds good cause to consider the evidence presented by the defendants.  Thus, the Court treats the defendants' motion as one for summary judgment under Rule 56.

The following facts are unrefuted unless otherwise indicated.  Virtue has a history of arrests and incarcerations, and abuse of both prescription and illegal drugs.  Safron describes Virtue as "an unreliable, select historian who reports different things to different providers to try to manipulate them to get what he wants."  (Doc. 33-1 at 2).  Safron supports that conclusion with a detailed summary of Virtue's medical records dating back to 2019 and his own experience treating Virtue.

Virtue was arrested and placed in Charlotte County Jail on August 22, 2024.  During his intake screening, Virtue reported taking Xanax, Adderall, and Seroquel.  Virtue said he had used benzodiazepines ("benzos") and prescription medications for non-medical reasons within the past week, and was unable to stop when he wanted.  After the screening, Virtue was placed in the infirmary for benzo detox.  During infirmary rounds the next day, Virtue

told nurse Rebecca Hensley he needed to see "psych." Virtue saw nurse practitioner Rosemita Prosper about four hours later for a health assessment. He reported using Xanax, Seroquel, Adderall, and Buspar before his arrest. Prosper prescribed Clonidine and Amlodipine to reduce Virtue's blood pressure. Hensley spoke with Safron about Virtue's reported home psych medicines. Safron chose not to prescribe them because (1) it was not clear what Virtue was actually prescribed and why, (2) some of the medications counteract each other and should not be prescribed together, and (3) the medications are highly abused and should not be prescribed in jail.

Virtue remained in the infirmary for the next few days, and medical staff checked on him frequently. Dr. Maryam Nabavi discharged Virtue from the infirmary to general population on August 26, 2024, referred him to mental health for an evaluation of previous psychiatric medications, and prescribed amlodipine and clonidine.

On August 27, 2024, Virtue saw Hensley and Prosper for chest pains and numbness in his arms, face, neck, and chest. Prosper sent Virtue to a local hospital for a cardiac evaluation. A cardiac workup was negative, and Virtue was treated for anxiety and told to follow up with the prison physician for his other medications.

Safron reviewed Virtue's records on August 29, 2024, and suggested a more sedating blood pressure medication to help treat his anxiety. On August

3

30, 2024, Prosper prescribed Amlodipine for 30 days. Virtue reported using benzos, a history of benzo withdrawal, and diagnoses of major depression, bipolar disorder, anxiety, PTSD, and ADHD. He denied thoughts of self-harm but reported a suicide attempt on August 1, 2024. Around 8:15, officer Jose Ortiz-Cruz received a phone call from Lara Homza stating that Virtue sent her a message with a suicidal statement. After confirming the information, Ortiz-Cruz put the pod on lockdown and had Virtue restrained for his own safety. Virtue was placed on direct observation status, and he did not attempt suicide.

While on suicide watch, Virtue remained alert, oriented, calm, and cooperative. He reported concern that he could not reach his mother, who had attempted suicide earlier in the month. He also repeatedly reported that he had never been without his medications for so long. Virtue was removed from suicide watch on September 2, 2024. He saw nurse Veronika Bassin a week later for a post-suicide watch visit. Virtue reported eating and sleeping well but also said everything was in a haze and that he woke up with panic attacks. He again reported he had never been without his medications so long and requested a psych visit.

On September 11, 2024, Safron discussed Virtue's case with director of nursing Sharon Monaco. Safron explained that available records contradicted Virtue's report that he had been prescribed high-dose, counter-acting addictive medications. Monaco discussed the situation with Virtue. Virtue claimed he

4

was on Remeron, Abilify, and Buspar while in Sarasota County Jail, and he signed a records release so the medical department could begin working to obtain his records. Monaco explained Virtue was scheduled to see Safron but it may take some time.

On September 13, 2024, Prosper saw Virtue and assessed stable, moderately controlled hypertension and ordered labs and weekly blood pressure monitoring. Virtue saw Bassin for a second post-suicide watch visit. Based on that visit, Virtue was removed from psych observation and returned to general population.

Safron saw Virtue via telemedicine on September 18, 2024. Safron found him to be a selective historian who danced around his questions and misled staff about his prior medications and incarcerations. Virtue reported seven past inpatient psychiatric hospitalizations and a history of drug use but no past suicide attempts. Safron discussed treatment opportunities available in the jail and assessed adjustment disorder with mixed disturbance of emotions and conduct and substance use disorder. Safron recommended a sedating blood-pressure medication and Remeron. He scheduled Virtue an appointment with Prosper the next day and a follow-up in two weeks to see how the new medications are working.

Virtue continued to see medical and mental-health providers regularly for a variety of reasons. On October 17, 2024, Safron prescribed Virtue 30 days

5

of Vistaril for anxiety. Following another telemedicine visit on November 6, 2024, Safron discontinued Vistaril and prescribed Remeron for 90 days. Virtue had a final telemedicine visit with Safron on January 29, 2025. Virtue reported improved anxiety symptoms, he had no suicidal ideations, psychosis, or mood or behavior problems, and his mental health was not impacting his ability to function in jail. Safron increased Virtue's Remeron to the maximum dose. That was Safron's final involvement in Virtue's treatment.

**Legal Standard**

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden falls on the movant, who must identify the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To defeat summary judgment, the non-movant must "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material facts exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006).

In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences drawn from it in the light most

favorable to the non-movant. *See Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006). But "[a] court need not permit a case to go to a jury…when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996). If the moving party demonstrates entitlement to judgment as a matter of law, the non-moving party must establish each essential element to that party's case. *Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 524 (1994).

Virtue files his Complaint under 42 U.S.C. § 1983. To state a § 1983 claim, a plaintiff must allege that (1) the defendant deprived him of a right secured under the Constitution or federal law, and (2) the deprivation occurred under color of state law. *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (citing *Arrington v. Cobb Cty.*, 139 F.3d 865, 872 (11th Cir. 1998)). In addition, a plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1059 (11th Cir. 2001).

## Discussion

In *Estelle v. Gamble*, the Supreme Court established that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' proscribed by the Eighth Amendment." 429 U.S. 97, 104 (1976). But not every claim of inadequate medical treatment gives rise

to an Eighth Amendment violation. *Id*. at 105. Negligence in diagnosis or treatment—even if it constitutes medical malpractice—does not necessarily violate the constitution. *Id.* at 106.

Pretrial detainees, like prisoners, have a right to medical treatment, and deliberate indifference to a detainee's serious medical needs is a constitutional violation. *Christmas v. Nabors*, 76 F.4th 1320, 1335 (11th Cir. 2023). Their right to medical treatment arises under the Fourteenth Amendment rather than the Eighth Amendment, but the legal standard is the same. *Id.* at 1331. To state a claim for deliberate indifference, a detainee must allege (1) he had a medical need, (2) the defendants exhibited deliberate indifference to that need, and (3) the defendants' deliberate indifference caused the detainee's injury. *Id.* at 1335. For purposes of a deliberate-indifference claim, mental health needs are no less serious than physical needs. *Thomas v. Bryant*, 614 F.3d 1288, 1312 (11th Cir. 2010).

Deliberate indifference is akin to subjective recklessness as used in criminal law. To establish deliberate indifference, a plaintiff "must show that the defendant was actually, subjectively aware that his own conduct caused a substantial risk of serious harm to the plaintiff." *Wade v. McDade*, 106 F.4th 1251, 1262 (11th Cir. 2024). A difference in medical opinion does not constitute deliberate indifference. *Hernandez v. Sec'y Fla. Dep't of Corr.*, 611 F. App'x 582, 584 (11th Cir. 2015). Nor does the exercise of medical judgment by a care

8

provider. *Id.* Medical treatment violates the constitution "only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* In any event, even if a defendant actually knew of a substantial risk to a detainee's health or safety, he cannot be found liable for deliberate indifference "if he 'responded reasonably to that risk.'" *Wade,* 106 F.4th at 1262 (quoting *Farmer,* 511 U.S. 825, 844-45 (1994)).

According to the unrefuted evidence, Safron consistently used his medical judgment when treating Virtue. Safron did not—as Virtue's complaint alleged—refuse to prescribe any medication. Rather, Safron recommended and prescribed medications based on Virtue's medical history, visits with Virtue, and consultations with other providers. Virtue's disagreement as to the medication he should have received cannot be the basis of a claim of deliberate indifference. *See Hernandez,* 611 F. App'x at 584 ("Any contentions about the type of medication or treatment [the plaintiff] received amounted to complaints about [the defendant's] exercise of medical judgment, which do not rise to the level of deliberate indifference."); *see also Adams v. Poag,* 61 F.3d 1537, 1545 (11th Cir. 1995) ("the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." (quoting *Estelle,* 429 U.S. at 107)).

9

Virtue's claim against YesCare—that staffing shortages delayed treatment—also fails. An official "who delays necessary treatment for non-medical reasons may exhibit deliberate indifference." *Bingham v. Thomas*, 654 F.3d 1171, 1176 (11th Cir. 2011). But not all delays violate the constitution. "[T]he reason for the delay and the nature of the medical need is relevant in determining what type of delay is constitutionally intolerable." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).

Safron explains there was an initial delay before his first visit with Virtue "because he is an unreliable historian and we needed to obtain his prior medical records from the community and his other incarcerations to determine what he was actually prescribed and why." (Doc. 33-1 at 2). Virtue was unhappy with the medications he received and wanted to see Safron more often to request changes. But Safron explains, "I did not need to see him more frequently that I did because he needed sufficient time to allow the medications to work before they could be adjusted." (*Id.*). Thus, both the initial delay and the delays between visits were for medical reasons, not the result of staffing shortages.

Virtue also fails to show damages stemming from a delay in treatment. "An inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill*

10

*v. Dekalb Reg. Youth Detention Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994) *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002). Virtue fails to present any such evidence.

For these reasons, the defendants are entitled to summary judgment. Accordingly, it is

**ORDERED:**

Defendants YesCare Corp. and Dr. Andrew Safron's Motion to Dismiss or for Summary Judgment (Doc. 34) is **GRANTED**. This action is **DISMISSED with prejudice**. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on September 8, 2025.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies: All Parties of Record